# EXHIBIT 1

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**IN RE: HAIR RELAXER
PRODUCTS LIABILITY LITIGATION**

MDL No.: _____

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407
<u>FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

Dated: November 15, 2022

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................... 1

II. BACKGROUND .................................................................................................. 2

III. LEGAL STANDARD......................................................................................... 3

IV. ARGUMENT...................................................................................................... 4

 A.  Transfer is Appropriate Under 28 U.S.C. § 1407. ............................................ 4

  1.  The Actions Involve Common Factual and Legal Issues.................................. 5

  2.  Transfer will Serve the Convenience of the Parties and Witnesses and Will Promote the
      Just and Efficient Conduct of the Actions........................................................ 6

   a.  Transfer will Eliminate Duplicative Discovery........................................... 8

   b.  Transfer will Avoid Conflicting Rules and Schedules. ............................... 9

   c.  Transfer will Reduce Litigation Costs and Conserve the Time and Effort of the
       Parties, Attorneys, Witnesses, and Courts................................................. 10

 B.  The Northern District of Illinois is the Most Appropriate Transferee Forum. ................. 10

V.  CONCLUSION .................................................................................................. 14

# I.     INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("Panel"), Plaintiffs Jenny Mitchell, Rugieyatu Bhonopha, Diane Grant, and Bernadette Gordon (collectively, "Movants") respectfully submit this memorandum in support of their Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings.

Movants seek transfer and assignment of all pending actions against Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc. (together, "L'Oréal"), Strength of Nature, LLC, Strength of Nature Global, LLC ("Strength of Nature"), Soft Sheen/Carson Inc., Soft-Sheen Carson LLC, Soft Sheen Carson (W.I.), Inc. (together, "Soft Sheen"), Dabur International Ltd., Dabur USA, Inc. (together, "Dabur"), Namaste Laboratories, LLC ("Namaste"), Godrej Son Holdings, Inc., Godrej Consumer Products, Ltd. (together, "Godrej"), PDC Brands ("PDC"), Parfums De Coeur, Ltd. ("Parfums De Coeur"), Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc., and House of Cheatham, LLC (together, "House of Cheatham") (collectively, "Defendants") related to injuries caused by hair care products containing endocrine-disrupting chemicals ("EDCs"), as alleged in several cases filed nationwide as listed in the Schedule of Actions (the "Actions"), as well as any subsequently-filed actions involving similar facts or claims, to the United States District Court for the Northern District of Illinois before the Honorable Mary M. Rowland, who currently presides over *Gordon v. L'Oréal USA, Inc., et al.*, No. 1:22-CV-06033 (N.D. Ill.), or before the Honorable Matthew F. Kennelly, who presides over the first-filed case in this litigation (*Mitchell v. L'Oréal USA, Inc., et al.*, No. 1:22-CV-05815 (N.D. Ill.)).  There are presently not less than nine substantially similar actions, filed on behalf of thirteen plaintiffs injured by hair care products containing EDCs, in four different federal district courts across the United States alleging

similar wrongful conduct by Defendants (the "Actions").  Movants are plaintiffs in four of the first nine filed cases presently pending in the Northern District of Illinois, Northern District of California, Southern District of New York, and Southern District of Georgia, respectively.

All of the Actions involve common questions of law and fact that arise from Defendants' manufacture, marketing, and sale of hair care products containing highly toxic EDCs, exposure to which causes disruption of the endocrine system and various types of cancer and other health problems, including, without limitation, uterine cancer, breast cancer, uterine fibroids, endometriosis, and pre-term childbirth delivery.

## II.    BACKGROUND

The Actions arise out of injuries caused by prolonged exposure to phthalates and other EDCs contained in Defendants' hair care products.  Beginning in the 1970s, Defendants began designing, manufacturing, marketing, and selling hair relaxer products, primarily to African-American customers, across the United States and around the world.  Hair relaxer products are classified as creams or lotions and are specifically marketed to women of color to straighten their hair, which in its natural state is typically characterized by dense curls that "naturally grows up and out."[1]

Hair relaxing, or lanthionization, can be performed by a professional cosmetologist in a salon or barbershop, or at home with at-home relaxer kits designed for individual use.  Relaxers are applied to the base of the hair shaft and left in place for a "cooking" interval, during which the relaxer alters the hair's texture by purposefully damaging the hair's natural protein structure.  The effect of the protein damage straightens and smooths the hair.  After a period of weeks (4-8 weeks

---

[1] Ayana Byrd & Lori Tharps, When Black Hair Is Against the Rules, *The New York Times*, April 30, 2014, https://www.nytimes.com/2014/05/01/opinion/when-black-hair-is-against-the-rules.html.

on average), depending on the hair's natural growth rate, the treated portion of the hair grows away from the scalp and new growth sprouts from the roots, requiring additional relaxer treatments to smooth the roots.  These additional treatments are colloquially referred to as "re-touches," resulting in women relaxing their new growth every four to eight weeks on average, usually for decades.

Hair relaxers can, and often do, cause burns and lesions in the scalp, facilitating entry of hair relaxer constituents into the body.  Defendants' hair relaxer products contain certain chemicals called phthalates.  Phthalates are endocrine disrupting chemical compounds used to make plastics more durable.  They also function as solvents and stabilizers in a variety of cosmetics and personal care products.

Numerous studies spanning more than two decades have demonstrated the adverse impact that EDCs have on the male and female reproductive systems, such as inducing endometriosis, developmental abnormalities, reproductive dysfunction and infertility, various cancers, and metabolic syndrome.  A wealth of scientific information is also available regarding long-term use of hair relaxers, straighteners, and hair dyes containing EDCs, that should have alerted Defendants to the specific and dangerous harms associated with their products when used as intended, particularly in women of color.  The Actions seek to hold Defendants liable for injuries caused by their wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and sale of their respective hair relaxer products that contain EDCs.

### III.   LEGAL STANDARD

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the

just and efficient conduct of such actions." 28 U.S.C. § 1407.  In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id.  See also In re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

## IV.   ARGUMENT

The Actions, and the many tag-along actions that will certainly follow, are appropriate for § 1407 transfer because they involve common issues and transfer will benefit the parties, witnesses, and the court system as a whole.  Further, given the strong factual connection of the Actions to the Northern District of Illinois and its geographically central and accessible location, transfer to that district is the most appropriate.

### A.    Transfer is Appropriate Under 28 U.S.C. § 1407.

"The purpose of § 1407. . . is to eliminate the potential  for conflicting contemporaneous pretrial rulings by coordinating district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968).  Centralization is meant to "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary."  *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017).

Pretrial transfer under § 1407 is appropriate and necessary here.  The Actions involve materially identical facts, the same or similar Defendants, and the same or similar legal claims. The number of cases grows by the day.  Unless these cases are transferred for pretrial proceedings,

the parties will incur excessive costs due to duplicative discovery, and will face the risk of inconsistent rulings on a variety of matters.

### 1.   The Actions Involve Common Factual and Legal Issues.

Each of the constituent Actions assert overlapping claims and will require adjudication of whether Defendants violated state deceptive trade practices statutes, product liability laws, warranty laws, other tort laws, and committed common law fraud in their manufacturing, marketing, and sale of hair relaxer products containing the highly toxic EDCs.  This Panel has noted that Section 1407 "does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer."  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 2d 1361, 1363 (J.P.M.L. 2014) (quotation omitted).  The allegations in these Actions, however, are consistent and materially identical; Defendants knew or should have known that their hair relaxer products were dangerous and defective because they contain highly toxic EDCs and they manufactured, marketed, and sold them anyway.  The *only* material difference among some of the Actions is the specific hair relaxer product(s) purchased and used by Plaintiffs.

These allegations provide the basis of each of the Actions.  As such, common questions of fact for each of the Actions include:

- Whether Defendants' hair relaxer products contain EDCs;

- Whether hair relaxer products containing EDCs are harmful when absorbed into the human body;

- Whether Defendants knew or should have known of publicly-available studies demonstrating the adverse impact EDCs have on the male and female reproductive systems;

- Whether Defendants knew or should have known of available scientific evidence regarding the dangers associated with long-term use of hair relaxers, straighteners, and hair dyes containing EDCs;

- Whether Plaintiffs' health conditions were caused by prolonged use of

Defendants' hair relaxer products; and

- Whether Defendants violated deceptive trade practice statutes, products liability laws, warranty laws, and other tort laws by marketing and selling their dangerous and defective hair relaxer products.

Adjudicating these and other common issues in a single transferee district will benefit the parties and witnesses and promote judicial efficiency by allowing a single court to coordinate the pretrial proceedings governing claims with these issues.  Further, each of the constituent Actions contains similar theories of recovery.  Thus, common questions of law also exist among the cases.  Given the common questions of law and fact, transfer and centralization is appropriate here.

### 2. Transfer will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Actions.

Transferring these Actions to a single court for coordinated or consolidated pretrial proceedings promotes efficiency and convenience for both Plaintiffs and Defendants.  Transfer and coordination or consolidation under a single judge for pretrial proceedings also promotes consistency in the legal rulings and the discovery process.  The purpose of the multidistrict litigation process is to "eliminate the potential for contemporaneous pretrial rulings by coordinating district and appellate courts in multidistrict related civil actions."  *In re Multidistrict Private Civ. Treble Damages Litig.*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968).  According to the Manual for Complex Litigation, the following four factors govern whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases:

1. The elimination of duplicative discovery;

2. The avoidance of conflicting rules and schedules;

3. The reduction of litigation cost; and

4. The conservation of the time and effort of the parties, attorneys, witnesses, and courts.

Manual for Complex Litigation (Fourth), § 20.131, at 219.

With nine cases filed on behalf of thirteen plaintiffs in four different districts—and with those numbers about to substantially increase—the size of this litigation weighs in favor of transfer. Although there are currently only nine pending actions (though Movants anticipate many more), transfer is nonetheless beneficial because the Actions rely upon the same studies to support their claims, are in the same stage of litigation, and are based on materially identical conduct. *See In re Viagra (Sildenafil Citrate) Products Liability Litig.*, 176 F. Supp. 3d 1377 (J.P.M.L. 2016) (centralizing fourteen pending actions, where all actions principally relied on the same studies to support their claims and, therefore, issues concerning general causation, the background science, regulatory history, and marketing would be common to all actions); *In re Air Crash at Tegucigalpa, Honduras, on May 30, 2008*, 598 F. Supp. 2d 1368 (J.P.M.L. 2009) ("Although only two actions are pending, centralization under Section 1407 is more suitable than informal coordination given that both actions have been pending for nearly the same length of time and arise from the same accident."); *In re Helicopter Crash Near Wendle Creek, British Columbia on August 8, 2002*, 350 F. Supp. 2d 1358 (J.P.M.L. 2004) (creating multidistrict litigation for four pending actions arising out of same helicopter crash); *In re Terrorist Attacks on September 11, 2001*, 295 F. Supp. 2d 1377 (J.P.M.L. 2003) (centralizing six pending actions against alleged supporters of terrorists who injured or killed plaintiffs in September 11, 2001 terrorist attacks).[2]

---

[2] *See also In re First Nat'l Collection Bureau, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 11 F. Supp. 3d 1353, 1354 (J.P.M.L. Apr. 8, 2014) ("Although there are relatively few parties and actions at present, efficiencies can be gained from having these actions proceed in a single district," such as "eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings . . . and conserv[ing] the resources of the parties, their counsel and the judiciary."); *In re Nutramax Cosamin Mktg. & Sales Practices Litig.*, 988 F. Supp. 2d 1371, 1371–72 & n.2 (J.P.M.L. 2013) (creating multidistrict litigation for three pending actions); *In re: Zurn Pex Plumbing Products Liability Litigation*, 572 F. Supp. 2d 1380, 1381 (J.P.M.L. 2008) (granting transfer and consolidation of three cases and six potential tag-alongs because of the "overlapping and, often, nearly identical factual allegations" that will likely require duplicative discovery and motion practice)*; In re: Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358, 1360

Indeed, without transfer and centralization, this litigation, which addresses a serious product defect contained within most of the hair relaxer products currently on the market in the United States, would create the needless and unnecessary expense of overlapping discovery (including expert discovery) and judicial inefficiency. Further, different federal courts would make duplicative rulings on the same issues, which could result in contradictory findings on significant pretrial disputes. Litigation of this scope and importance should not be beset with such inconsistencies and inefficiencies.

### a. Transfer will Eliminate Duplicative Discovery.

Because each Action is based upon the same facts and presents the same legal issues, plaintiffs in each of the Actions are, in turn, likely to seek overlapping discovery. *See In re Auto Body Shop*, 2014 WL 3908000, at *1-2 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the actions shared a common factual core). The Actions are also likely to involve complicated, technical issues regarding the chemical composition of the hair relaxer products at issue and the harmful effects of EDCs on the human body that will most likely result in substantial expert discovery and *Daubert* briefing and hearings. That fact alone militates in favor of transfer. *See, e.g., In re Natrol, Inc. Glucosamine/Chondroitin*, 2014 WL 2616783, at *1 (J.P.M.L. 2014). Similarly, plaintiffs in each of the Actions are likely to seek to depose many of the same corporate witnesses of Defendants, which again favors centralization. *See, e.g., In re Auto Body Shop*, 2014 WL 3908000, at *1 (transfer to a single judge was beneficial because he or

---

(J.P.M.L. 2009) (ordering transfer where three actions were pending in three districts); *In re: Optical Disk Drive Prod. Antitrust Litig*., 701 F. Supp. 2d 1382 (J.P.M.L. 2010) (ordering transfer of five cases pending in two total districts); *In re Wireless Telephone Replacement Protection Programs Litig*., 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer of three consumer protection cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig*., 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation).

she could "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands"); *In re Enfamil Lipil*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses.").

Given the similarity of the Actions and the potential for duplicative discovery, transfer here will undoubtedly conserve the parties' resources. *See, e.g., In re Air Crash at Dallas/Fort Worth Airport*, 623 F. Supp. 634, 635 (J.P.M.L. 1985).  It will conserve the courts' resources, as it would assign responsibility for overseeing a pretrial plan to one judge as opposed to many different federal judges. *See, e.g., In re PineIntel*, 342 F. Supp. 2d 1348, 1349 (J.P.M.L. 2004).

### b.  Transfer will Avoid Conflicting Rules and Schedules.

The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases.  *See In re Enron Securities Derivative & ERISA Litig*., 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings).

Pretrial procedures will necessarily involve dismissal motions, discovery motions, and *Daubert* motions, among others.  Without transfer and centralization, conflicting rulings on these motions across several courts will cause unnecessary confusion and duplicative effort.  Further, although only four district courts presently have cases, given the sheer number of hair relaxer products containing EDCs there will undoubtedly be many more materially similar cases filed across the United States.  Section 1407 transfer is thus the most efficient way to ensure that pretrial processes across all of these cases are uniformly litigated and adjudicated, thereby avoiding the

situation where multiple courts reach contrary conclusions and potentially subject litigants to conflicting responsibilities and obligations.

### c. Transfer will Reduce Litigation Costs and Conserve the Time and Effort of the Parties, Attorneys, Witnesses, and Courts.

Each of the Actions, and the many tag-along actions soon to follow, will benefit from having a single transferee judge address and adjudicate issues related to discovery and pretrial motion practice. Otherwise, courts and lawyers may be briefing the same issues in several different district courts, across several circuits, with conflicting laws, witnesses may be called to depositions in numerous cases, and third parties may be called to produce documents and witnesses in several different cases.

## B. The Northern District of Illinois is the Most Appropriate Transferee Venue.

The Panel balances a number of factors in determining the transferee venue, including: the experience, skill and caseloads of the available judges; the number of cases pending in the jurisdiction; the convenience of the parties; the location of the witnesses and evidence; and the minimization of cost and inconvenience to the parties. *See In re: Preferential Drugs Prods. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977); *In re: Tri-State Crematory Litig.*, 206 F. Supp. 1376, 1378 (J.P.M.L. 2002).

Based upon these factors, the Northern District of Illinois, in Chicago, is the appropriate transferee venue for this litigation. First, Chicago has a strong factual connection to the litigation. *See In re National Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017). It is one of the largest urban areas in the United States and has a large minority population, including one of the largest African-American communities in the United States, to whom the defective and dangerous hair relaxer products at issue were primarily marketed and sold. Second, one of the defendants in at least four of the Actions, Namaste, has its principal place of business located in

Chicago.[3]  And, all Defendants introduced their defective and dangerous hair care products into interstate commerce with knowledge and intent that such products be sold in the State of Illinois, including Chicago.

In addition, there are presently five pending cases on behalf of nine different plaintiffs in the Northern District of Illinois, the most of any judicial district.  Moreover, the Northern District of Illinois is a geographically central and accessible forum to the jurisdictions where other actions are presently pending (district courts in California, New York, and Georgia) and is relatively close to the remaining Defendants' various headquarters in New York (L'Oréal), New Jersey (Dabur), Connecticut (PDC and Parfums De Coeur), and Georgia (Strength of Nature, Soft Sheen, and House of Cheatham).  *See id.* (focusing on the proposed transferee venue's geographic location and convenience); *see also In re Polyester Staple Antitrust Litig.*, 259 F. Supp 2d 1376 (J.P.M.L. 2003).  Chicago is the third largest city in the United States, it has ample accommodations for business travelers, and is serviced by two large international airports, Chicago O'Hare International Airport ("ORD") and Chicago Midway International Airport ("MDW"), with routes to every corner of the country and beyond.  *See* Gregory Hansel, Extreme Litigation: *An Interview with Judge Wm. Terrell Hodges, Chairman of the Judicial Panel on Multidistrict Litigation*, 19 Me. B.J. 16, 19 (2004) ("[W]e take into account…the accessibility of the court, particularly air travel in selecting a transferee district.").  The infrastructure is certainly in place to host this MDL.

Moreover, the Northern District of Illinois has capable staff with a long history of successfully managing high-profile multidistrict litigations.  *See, e.g.*, *In re StarLink Corn Products Liability Litig.*, 152 F. Supp. 2d 1378 (J.P.M.L. 2001); *In re Sulfuric Acid Antitrust Litig.*,

---

[3] Additionally, Sally Beauty Supply—one of the largest specialty retailers and distributors of professional beauty supplies, including Defendants' hair relaxer products—was owned by a Chicago-based company, Alberto-Culver Corporation, for many years.

270 F. Supp. 1379 (J.P.M.L. 2003); *In re Factor VIII or IX Concentrate Blood Products Liability Litig.*, 303 F. Supp. 2d 1377 (J.P.M.L. 2004); *In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litig.*, 381 F. Supp. 2d 1383 (J.P.M.L. 2005); *In re: Plasma-Derivative Protein Therapies Antitrust Litig.*, 657 F. Supp. 2d 1371 (J.P.M.L. 2009); *In re: National Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 988 F. Supp. 2d 1373 (J.P.M.L. 2013); *In re: Fluidmaster, Inc.*, 65 F. Supp. 3d 1397 (J.P.M.L. 2014); *In re: Navistar Maxxforce Engines Marketing, Sales Practices and Products Liability Litig.*, 67 F. Supp. 3d 1382 (J.P.M.L. 2014); *In re Clearview AI, Inc., Consumer Privacy Litig.*, 509 F. Supp. 3d 1368 (J.P.M.L. 2020); *In re TikTok, Inc., Consumer Privacy Litig.*, 481 F. Supp. 3d 1331 (J.P.M.L. 2020); *In re Society Insurance Company COVID-19 Business Interruption Protection Insurance Litig.*, 492 F. Supp. 3d 1359 (J.P.M.L. 2020); *In re Recalled Abbott Infant Formula Products Liability Litig.*, MDL No. 3037, 2022 WL 3134144 (J.P.M.L. Aug. 5, 2022).  The Northern District of Illinois' docket also demonstrates that the court has the capacity to handle this litigation.  As of December 31, 2021, the Northern District of Illinois had 12,341 pending cases—the lowest number of cases that it has had in the last five years—with a median time from filing to disposition of 7.4 months.[4]

Finally, within the Northern District of Illinois, United States District Judges Mary M. Rowland and Matthew F. Kennelly are both excellent jurists who can expertly preside over this litigation.  Judge Rowland currently presides over *Gordon v. L'Oréal USA, Inc., et al*., No. 1:22-CV-06033 (N.D. Ill.), one of the very first Actions filed in this litigation.  Judge Rowland served as a United States Magistrate Judge from 2012-2019 and was nominated and confirmed to the Northern District bench by President Trump in 2019.  The American Bar Association unanimously rated Judge Rowland "well qualified" for the position. While she served as Magistrate Judge in *In*

---

[4] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2021.pdf

*re 100% Grated Parmesan Cheese Marketing and Sales Practices Litig.*, 201 F. Supp. 3d 1375 (J.P.M.L. 2016), to the best of Movants' knowledge, despite her stellar reputation and experience, Judge Rowland has not yet had the opportunity to oversee an MDL as a district judge.  Assigning this matter to Judge Rowland will, therefore, advance the Panel's interest in reaching out to newer judges and expanding the judiciary's MDL experience because, as Judge Breyer pointedly noted: "[y]ou need a skill set in order to handle very large cases, but the only way you acquire that skill set is through experience."[5]  Judge Rowland is an excellent and capable choice for overseeing this litigation and advancing the Panel's interests in expanding both diversity and MDL experience.

Correspondingly, Judge Kennelly, who is currently presiding over the first-filed Action, is an experienced jurist who was nominated and confirmed to the Northern District bench by President Clinton in 1999.  Judge Kennelly is a fair, demanding but reasonable, extremely organized, and efficient judge accustomed to presiding over complex cases "involving thousands of plaintiffs and several defendant[s]."[6]  He is also a current Panel Judge of the JPML and, consequently, has extensive knowledge of what it takes to fairly and efficiently manage multidistrict litigation. Indeed, he has "significant experience with MDL matters"[7] and has successfully managed numerous high-profile MDLs during his lengthy tenure.  *See, e.g.*, *In re Recalled Abbott Infant Formula Products Liability Litig.*, -- F. Supp. 3d --, 2022 WL 3134144 (J.P.M.L. Aug. 5, 2022); *In re: Androgel Products Liability Litig.*, 24 F. Supp. 3d 1378 (J.P.M.L.

---

[5] *See* U.S. Judicial Panel on Multidistrict Litigation, "Multidistrict Litigation Terminated through September 30, 2016," at 6-11 (listing 161 previous MDLs in Southern District of New York as of September 30, 2016), available at: http://www.jpml.uscourts.gov/sites/jpml/files/JPML_Terminated_Litigations-FY-2016_0.pdf.

[6] https://www.ilnd.uscourts.gov/_assets/_news/Kennelly%20MDL%20Final.pdf

[7] *Id.*

13

2014);[8] *In re Watson Fentanyl Patch Products Liability Litig.*, 883 F. Supp. 2d 1350 (J.P.M.L. 2012); *In re Text Messaging Antitrust Litig.*, 588 F. Supp. 2d 1372 (J.P.M.L. 2008).

## V.      **CONCLUSION**

For the above-stated reasons, Movants respectfully request that the Panel transfer the Actions set forth on the attached Schedule and all subsequently-filed tag-along cases for coordinated or consolidated pretrial proceedings in the United States District Court for the Northern District of Illinois before either the Honorable Mary M. Rowland or the Honorable Matthew F. Kennelly.

Dated: November 15, 2022

                                    Respectfully submitted,

                                    */s/ Diandra S. Debrosse Zimmermann*
                                    Diandra S. Debrosse Zimmermann
                                    Eli J. Hare
                                    **DICELLO LEVITT LLC**
                                    505 20th North Street, 15th Floor
                                    Birmingham, Alabama  35203
                                    Tel:  (205) 855-5700
                                    fu@dicellolevitt.com
                                    ehare@dicellolevitt.com

                                    Adam J. Levitt
                                    Blake Stubbs
                                    **DiCELLO LEVITT LLC**
                                    Ten North Dearborn Street, Sixth Floor
                                    Chicago, Illinois  60602
                                    Tel:  (312) 214-7900
                                    alevitt@dicellolevitt.com
                                    bstubbs@dicellolevitt.com

                                    Mark A. DiCello
                                    Mark Abramowitz
                                    Justin J. Hawal
                                    **DiCELLO LEVITT LLC**
                                    7556 Mentor Avenue

---

[8] This litigation was subsequently renamed *In re Testosterone Replacement Therapy Products Liability Litigation Coordinated Pretrial Proceedings*.

Mentor, Ohio  44060
Tel:  (440) 953-8888
madicello@dicellolevitt.com
mabramowitz@dicellolevitt.com
jhawal@dicellolevitt.com

Bernadette Armand
Elizabeth P. White
Éviealle J. Dawkins
**DiCELLO LEVITT LLC**
1101 17th Street, NW, Suite 1000
Washington, DC  20036
Tel:  (202) 975-2288
barmand@dicellolevitt.com
pwhite@dicellolevitt.com
edawkins@dicellolevitt.com

Benjamin Crump
**BEN CRUMP LAW**
122 South Calhoun Street
Tallahassee, Florida  32301
Tel:  (800) 691-7111
ben@bencrump.com

Nabeha Shaer
**BEN CRUMP LAW**
633 Pennsylvania Avenue, NW, Floor 2
Washington, DC  20004
Tel:  (800) 959-1444
nabeha@bencrump.com

Larry Taylor
**THE COCHRAN FIRM**
1825 Market Center Boulevard, Suite 550
Houston, Texas  77054
Tel: (214) 561-4260
ltaylor@cochrantexas.com

***Counsel for Movants***