**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: HAIR RELAXER MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 3060 |

**RESPONSE OF DEFENDANTS L'ORÉAL USA, INC., L'ORÉAL USA PRODUCTS, INC., SOFTSHEEN-CARSON LLC AND SOFTSHEEN-CARSON (W.I.), INC. TO MOTION FOR TRANSFER OF PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., SoftSheen-Carson LLC and SoftSheen-Carson (W.I.), Inc. (collectively, "L'Oréal USA") oppose the Motion for Transfer filed by movants Jenny Mitchell, Rugieyatu Bhonopha, Diane Grant, and Bernadette Gordon (collectively, "Movants"), which seeks to transfer nine actions and any other purported related actions to the Northern District of Illinois.[1]

---

[1] Movants' Schedule of Actions lists nine actions: *Terrell v. L'Oréal USA, Inc.*, *et al.*, S.D.N.Y. No. 1:22-cv-09008; *Bhonopha v. L'Oréal USA, Inc. et al.*, N.D. Cal. No. 3:22-cv-006395; *Mitchell v. L'Oréal USA, Inc., et al.*, N.D. Ill. No. 1:22-cv-05815; *Gamble v. Strength of Nature Global, LLC, et al.*, S.D. Ga. No. 4:22-cv-00256; *Lee v. Strength of Nature Global, LLC, et al.*, S.D. Ga. No. 4:22-cv-00257; *Gordon v. L'Oréal USA, Inc. et al.*, N.D. Ill. No. 1:22-cv-06033; *Smith v. L'Oréal USA, Inc., et al*, N.D. Ill. No. 1:22-cv-06047; *Williams, et al. v. L'Oréal USA, Inc., et al.*, N.D. Ill. No. 1:22-cv-06110 and *Grant v L'Oréal USA, Inc., et al.*, N.D. Ill. No. 1:22-cv-06113. L'Oréal USA is aware of at least four additional actions alleging injuries caused by hair relaxers and three additional putative class actions alleging violations of consumer protection statutes (listed in order of filing date starting with earliest filed): *Edwards v. L'Oréal USA, Inc., et al.*, S.D. Ill. No. 3:22-cv-02687 (putative class action); *Burton, et al. v. L'Oréal USA, Inc., et al.*, E.D. Mich. No. 2:22-cv-12784-LJM-DRG (putative class action); *Brownlee, et al. v. L'Oréal USA, Inc., et al.*, S.D. Ohio No. 3:22-cv-00336; *Davis v. L'Oréal USA, Inc., et al.*, N.D. Ill. No. 1:22-cv-06560; *Holmes v. L'Oréal USA, Inc., et al.*, D.S.C. No. 4:22-cv-04336; *Moore v. L'Oréal USA, Inc., et al.*, N.D. Ill. No. 1:22-cv-06785; and *Wall v. L'Oréal USA, Inc., et al.*, W.D. Mo. No. 5:22-cv-06128 (putative class action) (collectively, all of the actions identified above are referred to herein as the "Actions." Movants, collectively with the plaintiffs in all of the purportedly related actions are referred to herein as "Plaintiffs").

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...........................................................................1

II.  FACTUAL BACKGROUND ...........................................................................3

    A.   The Defendants and the Products ...............................................................3

    B.   The NIH Study ...........................................................................................4

    C.   Plaintiffs' Allegations ...............................................................................5

    D.   Procedural Status .......................................................................................8

III. ARGUMENT ...............................................................................................8

    A.   There are Not Sufficient Common Issues of Fact to Support a Transfer.....8

    B.   Centralization Will Not be Convenient or Efficient. ................................12

        1.   Centralization Will Not Advance Convenience...........................12

        2.   Centralization Will Not Advance Efficiency...............................13

        3.   Centralization is Inappropriate Because Plaintiffs' Individual Issues will Require Varied Pleading Challenges, Pretrial Practice and Discovery. ............................................................15

    C.   If Created, the MDL Should be Assigned to the Southern District of New York. ........................................................................................................17

        1.   The Southern District of New York is an Appropriate and Convenient Forum. ..................................................................17

        2.   If the Panel Elects to Transfer the Actions to the Northern District of Illinois, They Should be Transferred to The Honorable John Tharp, Jr. ....................................................................................19

IV.  CONCLUSION ...........................................................................................20

## TABLE OF AUTHORITIES
### (Continued)

**Page**

**Cases**

## FEDERAL CASES

*Bristol-Myers Squibb Co. v. Super. Ct. (Anderson)*,
  137 S. Ct. 1773 (2017) ............................................................................16

*In re Acetaminophen – ASD/ADHD Prod. Liab. Litig.*,
  MDL No. 3043, 2022 WL 5409345 (J.P.M.L. Oct. 5, 2022) ................................11

*In re Belviq (Lorcaserin HCl) Prod. Liab. Litig.*,
  555 F. Supp. 3d 1369 (J.P.M.L. 2021)............................................................*passim*

*In re Best Buy Co.*,
  804 F. Supp. 2d 1376 (J.P.M.L. 2011)..................................................................8

*In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*,
  509 F. Supp. 3d 1362 (2020) ................................................................................17

*In re Children's Personal Care Prod. Liab. Litig.*,
  655 F. Supp. 2d 1365 (J.P.M.L. 2009).........................................................9, 10, 13

*In re Concrete Pipe*,
  302 F. Supp. 244 (J.P.M.L. 1969).........................................................................12

*In re Covidien Hernia Mesh Prod. Liab. Litig.*,
  481 F. Supp. 3d 1349 (J.P.M.L. 2020)..................................................................13

*In re CP4 Fuel Pump Mktg., Sales Prac. & Prod. Liab. Litig.*,
  412 F. Supp. 3d 1365 (J.P.M.L. 2019)..................................................................12

*In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig.*,
  446 F. Supp. 242 (J.P.M.L.1978)..........................................................................14

*In re Ford Motor Co. DPS6 PowerShift Transmission Prod. Liab. Litig.*,
  289 F. Supp. 3d 1350 (J.P.M.L. 2018)..................................................................18

*In re Fresh and Process Potatoes Antitrust Litig.*,
  744 F. Supp. 2d 1381 (J.P.M.L. 2010)..................................................................18

*In re Geico Customer Data Security Breach Litig.*,
  568 F. Supp. 3d 1406 (J.P.M.L. 2021)........................................................... 14-15

*In re Generali COVID-19 Travel Ins. Litig.*,
  509 F. Supp. 3d 1365 (J.P.M.L. 2020)..................................................................18

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*In re Helicopter Crash in Germany on Sept. 16, 1975,*
    443 F. Supp. 447 (J.P.M.L. 1978)...........................................................................17

*In re Hyundai and Kia GDI Engine Mktg., Sales Prac. & Prod. Liab. Litig.,*
    412 F. Supp. 3d 1341 (J.P.M.L. 2019)............................................................. 12-13

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac. & Liab. Litig.,*
    903 F.3d 278 (3d Cir. 2018)..................................................................................16

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac.*
*and Prod. Liab. Litig.,*
    220 F. Supp. 3d 1356 (J.P.M.L. 2016).................................................................11

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Prac. & Prod. Liab. Litig.,*
    959 F. Supp. 2d 1375 (J.P.M.L. 2013).................................................................13

*In re Maybelline New York & L'Oréal Paris Cosmetic Prod.*
*Mktg. & Sales Prac. Litig.,*
    949 F. Supp. 2d 1367 (J.P.M.L. 2013).................................................................15

*In re Medi-Cal Reimbursement Rate Reduction Litig.,*
    652 F. Supp. 2d 1378 (J.P.M.L. 2009)...................................................................9

*In re Narconon Drug Rehab. Mktg., Sales Prac. and Prod. Liab. Litig.,*
    84 F. Supp. 3d 1367 (J.P.M.L. 2015).............................................................. 15-16

*In re Nat'l Rifle Ass'n Bus. Expenditures Litig.,*
    521 F. Supp. 3d 1353 (J.P.M.L. 2021).................................................................14

*In re Pharmacy Benefit Plan Adm'rs Pricing Litig.,*
    206 F. Supp. 2d 1362 (J.P.M.L. 2002)...................................................................9

*In re Proton-Pump Inhibitor Prod. Liab. Litig.,*
    273 F. Supp. 3d 1360 (J.P.M.L. 2017).................................................................13

*In re Shoulder Pain Pump-Chondrolysis Prod. Liab. Litig.,*
    571 F. Supp. 2d 1367 (J.P.M.L. 2008).............................................................9, 10

*In re Six Flags Fair & Accurate Credit Transactions Act (FACTA) Litg.,*
    289 F. Supp. 3d 1343 (J.P.M.L. 2018)...................................................................8

*In re Vehicle Carrier Servs. Antitrust Litig.,*
    978 F. Supp. 2d 1382 (J.P.M.L. 2013).................................................................18

*In re Yasmin & Yaz (Drospirenone) Mktg.,*
    275 F.R.D. 270 (S.D. Ill. 2011) ...........................................................................17

## TABLE OF AUTHORITIES
### (Continued)

**Page**

**FEDERAL STATUTES**

28 U.S.C. § 1407 .................................................................................. 1, 8, 9, 13

**RULES**

Rule 9(b) .................................................................................................. 17

**OTHER AUTHORITIES**

U.S. Panel on Multidistrict Litigation (Nov. 15, 2022),
    https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets
    _By_Actions_Pending-November-15-2022.pdf ................................. 19, 20

U.S. Panel on Multidistrict Litigation (Nov. 15, 2022),
    https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets
    _By_Actions_Pending-November-15-2022.pdf ...................................... 20

U.S. Panel on Multidistrict Litigation (Nov. 15, 2022),
    https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_
    By_District-November-15-2022.pdf ...................................................... 19

## I.    <u>PRELIMINARY STATEMENT</u>

The essential purpose of 28 U.S.C. § 1407 is to promote efficiency by transferring cases that share one or more common questions of fact, such that justice is best served through the management of the cases by one judicial officer.  *See In re Belviq (Lorcaserin HCI) Prod. Liab. Litig.*, 555 F. Supp. 3d 1369-70 (J.P.M.L. 2021) ("*In re Belviq*").  Where, as here, the Actions are based on amorphous complaints alleging that undisclosed chemicals in undisclosed products manufactured by competing defendants may have caused a variety of different ailments, the Panel should deny the Motion to Transfer.

Movants seek to centralize eight products liability cases and one putative class action arising out of an alleged failure to warn about the alleged risks of exposure to various hair straightening products ("hair relaxers").  Movants allege that use of unspecified hair relaxers at unspecified times over the course of the last 50 years might increase the risk of a myriad of medical conditions ranging from uterine and breast cancer, to fibroids and endometriosis, to several other reproductive issues including, but not limited to, miscarriage, pre-term delivery and irregular menstrual bleeding.  These conditions are allegedly caused by at least 20 different products, manufactured by no fewer than five separate defendants.

Having one judicial officer handle all the Actions will not promote judicial economy and will instead breed inefficiency, as the complaints identify countless permutations as between the products, usage dates and alleged injuries.  No economies of scale can be gained by tasking one judicial officer with overseeing claims relating to allegations that a product caused breast cancer on the one hand, and fibroids on the other.  As the only common alleged "fact" in these Actions is that Plaintiffs attribute some form of injury (ranging from varying physical ailments to economic harm) to one or more of at least 20 hair relaxer products, the Panel should deny the Motion.  *See*

*In re Belviq*, 555 F. Supp. 3d at 1369 (declining to centralize where movants "alleged a broad range of cancers without indicating the mechanism [that] allegedly causes the various cancers.").

The complaints filed by Movants include lengthy allegations regarding the invention of hair relaxers by persons and entities other than defendants here. They refer generally to endocrine-disrupting chemicals ("EDCs"), and allege that one such EDC, Di-2-ethylhexylphthalate ("DEHP"), may adversely impact the female reproductive system. However, the complaints do not identify the specific products used by Movants. As a result, there is no allegation that a specific product made by (for example) L'Oréal USA contained EDCs or DEHP and led to a particular plaintiff's alleged condition. Instead, the Actions refer generally to lines of products and do not identify the chemical or chemicals contained in those products that might increase the risk of the medical conditions alleged. Hence, beyond the unremarkable fact that defendants have manufactured hair relaxers that some (but not all) Movants claim to have used, and that thereafter they have suffered an adverse medical condition or economic harm, there is no question of fact common to ***all*** of the Actions.

The Actions were filed in the wake of a National Institutes of Health ("NIH") study suggesting a possible link between hair relaxers and uterine cancer. The study itself stated that more research was warranted to confirm its findings. Che-Jung Chang, et al., *Use of Straighteners and Other Hair Products and Incident Uterine Cancer*, Journal of the National Cancer Institute (Oct. 17, 2022) at 7-8.

Yet, Movants filed the first three of the Actions just four days after the study's release, apparently without even reviewing the labels of the product lines identified in their complaints. L'Oréal USA's Food Drug and Cosmetic Act compliant label reveals that its hair relaxer products do not contain DEHP, or any other known EDCs. In fact, Movants appear to admit as much, as

2

they make no allegations that any EDCs are contained in a L'Oréal USA product.

Ignoring the lack of common facts, Movants claim that it will be efficient to centralize the Actions because they "rely upon the same studies."  (ECF No. 1-1 at 10.)  The far ranging "common questions" posed by Movants regarding the effects of various products containing unspecified chemicals marketed by varied defendants at varying time periods do not support a finding of efficiency or economy simply because Plaintiffs' experts may rely on the same studies to support their opinions.  *See In re Belviq*, 555 F. Supp. 3d at 1370, n. 5 (denying transfer and finding it notable that the clinical study relied upon by movants did not address causation as to all alleged claims).  The possible basis for a party's expert opinion is far from the common question of fact that will promote judicial economy from centralization.  Thus, the Panel should deny the motion outright.  However, if the Panel decides to grant the motion, the Actions should be transferred to The Honorable Valerie Caproni in the Southern District of New York.  And, if the Panel is intent on granting Movants' request to proceed in the Northern District of Illinois, the Actions should be assigned to The Honorable Judge John J. Tharp, Jr.

## II.  FACTUAL BACKGROUND

### A.  The Defendants and the Products

L'Oréal USA is a worldwide leader in haircare and cosmetics; however, L'Oréal USA occupies a relatively small portion of the hair relaxer market.  In 1998, L'Oréal USA acquired Soft Sheen Products, Inc., and in 2000, it acquired Carson, Inc.  Both of these companies offered hair relaxer products, and L'Oréal USA now markets their legacy product lines under the brand SoftSheen-Carson.  Plaintiffs identify two SoftSheen-Carson product lines in their complaints: Dark & Lovely and Optimum, each of which carry a variety of hair relaxer products.

L'Oréal USA is committed to ensuring the safety of its products.  L'Oréal USA's Research

& Innovation and marketing teams work to create products that are as effective as they are safe, and which accurately represent their contents and uses. L'Oréal USA's teams comply with internal standards that far exceed external regulations. L'Oréal USA values the trust consumers place in its brands and aims to strengthen that relationship by informing people about its products and services. This includes striving for honest and accurate labeling of products. L'Oréal USA's hair relaxer products do not contain DEHP or any other phthalates. L'Oréal USA is unaware of any connection between its hair relaxer products and the health conditions alleged by Plaintiffs.[2]

**B.     The NIH Study**

On October 17, 2022, a study was published in the Journal of the National Cancer Institute (the "NIH Study"). Che-Jung Chang, et al., *supra* p. 1. The NIH Study followed 33,947 women aged 35 to 74 years old for about 11 years. All of the women in the NIH Study had sisters who had been diagnosed with breast cancer. Throughout the study, 378 women developed cancer. The NIH Study predicted that 1.64% of women who never used hair straighteners would go on to develop uterine cancer by the age of 70, but for frequent users of hair relaxers, the risk may increase to 4.05%. The NIH Study did not collect information on specific brands or ingredients used by the participants. The NIH Study cautions that "[m]ore research is warranted to confirm [its] novel findings in different populations, particularly in African American and/or Black women because of the high prevalence of straightener use, and to evaluate the potential combination of hair products to health disparities in uterine cancer." *Id.* at 7-8.

---

[2] The Actions name a number of other defendants: Dabur International Ltd., Dabur USA, Inc., Namaste Labs, LLC, Strength of Nature Global, LLC, Godrej Consumer Products Ltd., Godrej Son Holdings, Inc., PDC Brands, and Parfum De Coeur, Ltd. Presumably, these companies market the other brands referenced in the Actions, including: Just for Me, Organic Root Stimulator Olive Oil Relaxer, Motions, Soft & Beautiful, Crème of Nature, African Pride, Cantu Shea Butter Relaxer, Carefree, Africa's Best and Protective Mega Growth.

C.     **Plaintiffs' Allegations**

The first three complaints were filed less than a week after the NIH Study was published, with the remaining complaints following.  Plaintiffs have not identified the specific L'Oréal USA product they purportedly used, nor have they alleged the chemical(s) contained in a L'Oréal USA product that may have caused their condition.  Beyond this common deficiency, the allegations reveal a lack of commonality:

| Plaintiff | Products or Product Lines Identified in Complaint | Named Defendants | Alleged Usage Dates | Alleged Injuries |
|---|---|---|---|---|
| Rhonda Terrell S.D.N.Y. 1:22-cv-09008 | Motions, Dark & Lovely, Soft & Beautiful, Optimum Care, Crème of Nature | L'Oréal USA, Strength of Nature Global, LLC | 1994-2012 or 1975-1997 | Uterine cancer |
| Rugieyatu Bhonopha N.D. Cal. 3:22-cv-006395 | Just for Me, Organic Root Stimulator ("ORS") Olive Oil Relaxer, Dark & Lovely | L'Oréal USA, Strength of Nature Global, LLC, Dabur Int'l Ltd., Dabur USA Inc., Namaste Labs, LLC | 1996-2008 | Fibroids, miscarriage |
| Jenny Mitchell N.D. Ill. 1:22-cv-05815 | Motions, Organic Root Stimulator ORS Olive Oil Relaxer, Dark & Lovely | L'Oréal USA, Strength of Nature Global, LLC, Dabur Int'l Ltd., Dabur USA Inc., Namaste Labs, LLC | 2000-2022 | Uterine cancer |
| Keaira Gamble S.D. Ga. 4:22-cv-00256 | Just For Me, Motions, ORS Olive Oil Relaxer | Strength of Nature Global, LLC, L'Oréal USA, Namaste Labs, LLC | 1994-2012 | Uterine fibroids, endometriosis, cyst on left ovary, heavy clotting during menstrual cycle, painful cramping |

| Plaintiff | Products or Product Lines Identified in Complaint | Named Defendants | Alleged Usage Dates | Alleged Injuries |
|---|---|---|---|---|
| Mahogany Lee S.D. Ga. 4:22-cv-00257 | Dark & Lovely, Optimum Care; Motions, Just For Me, ORS Olive Oil Relaxer, African Pride | Strength of Nature Global, LLC, L'Oréal USA, Namaste Labs, LLC Godrej Consumer Prod. Ltd. | 1993-2013 | Uterine fibroids, heavy bleeding and discomfort during her menstrual cycle |
| Bernadette Gordon N.D. Ill. 1:22-cv-06033 | Dark & Lovely, Just for Me | L'Oréal USA, Strength of Nature, LLC, Godrej Son Holdings, Inc. | 1983-2015 or 1986-2016 | Breast cancer, uterine cancer |
| Timika Smith N.D. Ill. 1:22-cv-06047 | Dark & Lovely, Just for Me, Cantu Shea Butter Relaxer | L'Oréal USA, Strength of Nature, LLC, Godrej Son Holdings, Inc., Parfums de Coeur, Ltd., PDC Brands | 1987-2017 | Uterine cancer, endometriosis |
| Evelyn Williams; Tabatha Taggart; Tameka Meadows; Alicia Glenn  N.D. Ill. 1:22-cv-06110 | Dark & Lovely (five different products); Optimum Professional multi-mineral reduced PH Crème Relaxer | L'Oréal USA | None identified | None identified |
| Diane Grant N.D. Ill. 1:22-cv-06113 | Carefree, Optimum, Dark & Lovely, Just for Me, Motions, Africa's Best | L'Oréal USA, Strength of Nature, LLC, Godrej Son Holdings, Inc., Beauty Bell Enterprises, LLC d/b/a House of Cheatham, Inc., House of Cheatham, LLC | 1982-2019 | Uterine cancer |
| MMRenee Edwards S.D. Ill. 3:22-cv-02687 | Dark & Lovely (five different products); Optimum Professional multi-mineral reduced PH Crème Relaxer | L'Oréal USA | None identified | Ovarian cancer |

| Plaintiff | Products or Product Lines Identified in Complaint | Named Defendants | Alleged Usage Dates | Alleged Injuries |
|---|---|---|---|---|
| Angela Burton; Natasha Casby; Bridgette Quinn; Sondra Loggins<br><br>E.D. Mich.<br>2:22-cv-12784 | Dark & Lovely (five different products); Optimum Professional multi-mineral reduced PH Crème Relaxer | L'Oréal USA | None identified | None identified |
| Jackie Brownlee; Jerri Peebles<br>S.D. Ohio<br>3:22-cv-00336 | Dark & Lovely, Optimum, Just For Me | L'Oréal USA Strength of Nature, LLC, Godrej Consumer Products Ltd., Godrej Son Holdings, Inc. | 1973-2010 | Uterine cancer |
| Shaquita Davis<br>N.D. Ill.<br>1:22-cv-06560 | ORS Olive Oil Built-In Protection Full Application No-Lye Hair Relaxer, Motions Professional Classic Formula Hair Relaxer, Just for Me Conditioning Crème Relaxer Regular, Protective Mega Growth No-Lye Relaxer, Softsheen Carson Bantu No Base Relaxer | L'Oréal USA, Strength of Nature, LLC, Godrej SON Holdings, Inc., PDC Brands, Parfums De Coeur, Ltd | 1990-2020 | Breast cancer, fibroids, endometriosis |
| Roberta Holmes<br>D.S.C.<br>4:22-cv-04336 | Dark & Lovely | L'Oréal USA | "decades" | Endometriosis cancer |
| Terry Moore<br>N.D. Ill.<br>1:22-cv-06785 | Dark & Lovely, Motions, ORS Olive Oil Relaxer, | L'Oréal USA, Strength of Nature Global, LLC, Dabur International, Ltd., Dabur USA Inc. | 1973-2019 | Uterine cancer |
| Jennifer Wall<br>W.D. Mo.<br>5:22-cv-06128 | Dark & Lovely, Optimum Smooth | L'Oréal USA | None identified | Uterine bleeding |

**D.**     **Procedural Status**

L'Oréal USA has been served in a few, but not all, of the Actions, and has yet to file a responsive pleading in any case.  L'Oréal USA has also been served with an action filed in the Supreme Court of the State of New York alleging injuries caused by hair relaxers, *Prudhomme v. L'Oréal USA, Inc.*, Case No. 159714/2022.

**III.**     **ARGUMENT**

The Panel should deny the motion because the Actions do not share sufficient common questions of fact and transfer would neither promote convenience nor efficiency.  Under 28 U.S.C. § 1407, the Panel may transfer actions if it determines that:  (1) "one or more common questions of fact are pending in different districts;" (2) transfer would serve "the convenience of the parties and witnesses;" and (3) transfer "will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  "[C]entralization under Section 1407 should be the last solution after considered review of all other options."  *In re Six Flags Fair & Accurate Credit Transactions Act (FACTA) Litg.*, 289 F. Supp. 3d 1343-44 (J.P.M.L. 2018) (citation omitted).  The moving parties bear the burden of demonstrating the need for centralization.  *See In re Best Buy Co.*, 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011) (denying motion to transfer because "the proponents of centralization have not met their burden of demonstrating the need for centralization.").

Movants do not make any serious effort to establish the required elements for centralization.  They do not adequately articulate factual issues and fail to establish that any efficiencies will be gained by centralization.

**A.**     **There are Not Sufficient Common Issues of Fact to Support a Transfer.**

First and foremost, the Panel should deny the motion because the Actions do not share one or more common issues of fact.  28 U.S.C. § 1407(a).  Centralization is not appropriate where

"unique questions of fact predominate[] over any common questions of fact." *In re Pharmacy Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362-63 (J.P.M.L. 2002). "Merely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization." *In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378 (J.P.M.L. 2009). Centralization is not appropriate where the efficiencies that might be gained by centralization would be "overwhelmed by the multiple individualized issues (including ones of liability and causation)." *In re Shoulder Pain Pump-Chondrolysis Prod. Liab. Litig.*, 571 F. Supp. 2d 1367-68 (J.P.M.L. 2008).

A predominance of common questions of fact is paramount to the decision to transfer pursuant to 28 U.S.C. § 1407, which Movants have not, and cannot, show here. *Id.*; *see also In re Children's Personal Care Prod. Liab. Litig.*, 655 F. Supp. 2d 1365 (J.P.M.L. 2009). The Panel denied the motion to transfer in *In re Shoulder Pain Pump-Chondrolysis Products Liability Litigation* because there was not sufficient commonality. 571 F. Supp. 2d at 1368. In those cases, the plaintiffs alleged that shoulder pain pumps and/or the anesthetic drugs used in those pumps caused chondrolysis. *Id.* However, the actions involved "an indeterminate number of different pain pumps made by different manufacturers" as well as "different anesthetic drugs made by different pharmaceutical companies." *Id.* The Panel determined that despite some actual overlap, individualized issues of liability and causation outweighed any efficiencies to be gained from centralization. *Id.*

Likewise, in *In re Children's Personal Care Products Liability Litigation*, 655 F. Supp. 2d 1365 (J.P.M.L. 2009), the Panel denied the motion to transfer for lack of commonality. In that case, the "[c]laims in all actions generally revolve[d] around the allegations that certain children's care products—including baby shampoo, bubble bath, baby wipes and similar products—which

are represented as child-safe, [were] contaminated with 1, 4–dioxane, formaldehyde and/or methylene chloride." *Id.*  The actions had only one common defendant amongst a diverse group of other defendants and involved "[m]ore than ten different baby products with differing formulations." *Id.*  The Panel found there were not sufficient common questions to support a transfer.  *Id.*

In *In re Belviq*, 555 F. Supp. 3d 1369 (J.P.M.L. 2021), the Panel declined to centralize cases alleging that the weight loss drug Belviq caused various cancers.  Plaintiffs in those cases "allege a broad range of cancers without indicating the mechanism by which Belviq allegedly causes the various cancers." *Id.* at 1370.  In reaching its conclusion, the Panel concluded that individual issues related to causation would predominate because the plaintiffs had various conditions, alleged varied uses of the product, and failed to identify the mechanism that caused their medical conditions.  *Id.* at 1370.  The Panel also found it notable that "the clinical health study that led to Belviq's withdrawal from the market found no increased incidence of six of the seven forms of cancer alleged in the involved cases."  *Id.* at 1370 n. 5.

Read together, *In re Shoulder Pain Pump-Chondrolysis Products. Liability Litigation*, *In re Children's Personal Care Products Liability Litigation* and *In re Belviq* establish that where there are multiple products, multiple defendants, and multiple alleged medical conditions, the individual issues of liability and causation overwhelm any efficiencies gained by centralization.  That is precisely the case here.  Plaintiffs in the Actions identify multiple hair relaxers over multiple product lines, manufactured by at least five defendants, which are alleged to have caused more than a dozen different medical conditions.  Plaintiffs further allege use of the products at unspecified times over the last 50 years.  Yet, Plaintiffs do not identify any specific chemical(s)

common to all of the products.[3]  Plaintiffs generally allege that DEHP specifically and phthalates generally are harmful, but do not specify which products contained DEHP or their concentration levels.  In fact, L'Oréal USA's products do not contain DEHP.  Plaintiffs identify various medical conditions including, but not limited to, uterine cancer, breast cancer, ovarian cancer, miscarriage, fibroids, endometriosis and irregular menstrual bleeding.  Additionally, plaintiffs without any alleged physical injuries have brought putative class actions challenging L'Oréal USA's marketing practices.  There are simply too many varying issues to warrant centralization.

Centralization of the actions will result in a single court being forced to manage litigation regarding different chemicals used by different defendants resulting in different conditions.  That court will also be forced to oversee claims by plaintiffs with varying conditions they allege were caused by differing uses of different products over different time periods.  Finally, the assigned court will also be required to oversee challenges to labeling and marketing brought by plaintiffs that suffered no injury.  This morass of issues will not be more efficiently managed by one judicial officer, but rather by judges who have been individually assigned to these cases.

In response to this argument, Movants may rely upon the Panel's recent decision in *In re Acetaminophen – ASD/ADHD Products Liability Litigation*, MDL No. 3043, 2022 WL 5409345 (J.P.M.L. Oct. 5, 2022).  That case is distinguishable.  In reviewing those matters, the Panel determined that claims alleging use of over-the-counter generic acetaminophen products while pregnant caused autism spectrum disorder, attention deficit disorder, or both in children were appropriate for centralization.  The Panel reached that conclusion despite the fact that there were

---

[3] Movants may also argue that the Panel has previously centralized actions involving different defendants and different products; however, those products generally had a common ingredient, *e.g.* talc.  *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Prac. and Prod. Liab. Litig.*, 220 F. Supp. 3d 1356 (J.P.M.L. 2016).

numerous defendants and numerous products involved as well as multiple medical conditions. However, all of those cases appear to involve a single active ingredient (acetaminophen) and two specifically identified medical conditions (ASD and ADHD). That is not the case here. While there may be efficiencies gained by a single court managing various claims regarding acetaminophen, there is no parallel here. None of the complaints filed thus far identify a single common chemical present in all of the products at issue.

Movants fail to carry their burden of identifying common facts supporting centralization that would not be overwhelmed by individual determinations of liability and causation.

### B.  Centralization Will Not be Convenient or Efficient.

The Panel also should deny the motion because centralization will not increase convenience or efficiency. Centralization is appropriately denied where it "is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of [the] litigation." *In re CP4 Fuel Pump Mktg., Sales Prac. & Prod. Liab. Litig.*, 412 F. Supp. 3d 1365, 1369 (J.P.M.L. 2019). "[N]either the convenience of witnesses and parties nor the just and efficient conduct of actions are served, *ipso facto*, by transfer just because there are common questions of fact in the civil actions involved." *In re Concrete Pipe*, 302 F. Supp. 244, 254 (J.P.M.L. 1969) (Weigel, J., concurring). Here, centralization will neither increase convenience nor efficiency.

### 1.  Centralization Will Not Advance Convenience.

The Panel should deny the motion because centralizing the actions will not increase convenience for parties and witnesses. Where "only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Hyundai and Kia GDI Engine Mktg., Sales Prac. & Prod. Liab. Litig.*, 412 F.

Supp. 3d 1341, 1343 (J.P.M.L. 2019).  This burden cannot be avoided by claims that more cases will be filed in the future.  "[T]he Panel has been 'disinclined to take into account the mere possibility of future filings in [its] centralization calculus.'"  *In re Covidien Hernia Mesh Prod. Liab. Litig.*, 481 F. Supp. 3d 1349 (J.P.M.L. 2020) (citing *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Prac. and Prod. Liab. Litig.*, 959 F. Supp. 2d 1375-76 (J.P.M.L. 2013)).

Here, Movants seek centralization of "nine cases filed on behalf of thirteen plaintiffs in four different districts."  (ECF No. 1-1 at 7.)  L'Oréal USA is aware of seven additional actions that might be viewed as tag-along actions.  The number of actions does not weigh in favor of centralization.  *See In re Proton-Pump Inhibitor Prod. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362-63 (J.P.M.L. 2017) (denying centralization of 39 products liability actions).  The Panel, consistent with past practice, should not consider Movants' promises of additional actions to be filed.  *Id.; see also In re Covidien Hernia Mesh Prod. Liab. Litig.*, 481 F. Supp. 3d at 1349.  There are not sufficient similar actions to gain any convenience from centralization.

### 2.   Centralization Will Not Advance Efficiency.

Centralization will not advance the just and efficient conduct of the actions.  It is Movants' burden to establish that "centralization would be the most efficient path for this litigation."  *In re Belviq (Lorcaserin HCl) Prod. Liab. Litig.*, 555 F. Supp. 3d at 1370.  "[C]entralization under Section 1407 should be the last solution after considered review of all other options."  *In re Covidien Hernia Mesh Prod. Liab. Litig.*, 481 F. Supp. 2d at 1378.  Where alternatives to transfer exist that address these factors, transfer is appropriately denied.  *In re Children's Personal Care Prod. Liab. Litig.*, 655 F. Supp. 2d at 1365.

The Panel considers various factors in determining whether alternatives to transfer are appropriate.  For example, in *In re Belviq*, the Panel found:

> [A] number of factors suggest that informal coordination would be practicable.
> All actions are in their early stages.  Plaintiffs in over half the actions before us
> are represented by the same counsel, and four of the other actions are pending in
> the same district . . .  Both defendants are represented in all underlying actions by
> national counsel, who are coordinating . . .  Defendants and movants have reached
> agreements regarding a number of discovery issues . . . And defendants have
> offered to cross-notice all corporate witness depositions and share generic fact
> discovery in all actions.

*In re Belviq*, 555 F. Supp. 3d at 1370; *see also In re Eli Lilly and Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L.1978) (noting that parties could cross-notice depositions, stipulate that discovery relevant to more than one action be usable in all those actions, seek orders from the involved courts directing coordination of pretrial efforts, or seek a stay).

Denial of a transfer motion is appropriate where movants fail to make any effort at informal coordination before seeking centralization.  *In re Nat'l Rifle Ass'n Bus. Expenditures Litig.*, 521 F. Supp. 3d 1353 (J.P.M.L. 2021).  Here, almost all of the factors the Panel considered in *In re Belviq* are present.  All of the Actions are in their early stages.  Plaintiffs in more than half of the Actions are represented by the same counsel.  A number of the Actions are pending in the same district.  Defendants are represented by national counsel that are capable of coordinating with each other.  Movants made no effort to explore alternatives to centralization prior to filing their motion. L'Oréal USA is prepared to meet and confer regarding such alternatives such as cross-noticing depositions and sharing discovery as appropriate.  *See In re Geico Customer Data Security Breach Litig.*, 568 F. Supp. 3d 1406-07 (J.P.M.L. 2021) (centralization "should be the last solution" after considering all other options including "agreeing to proceed in a single forum via Section 1404

transfer of the cases and voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent rulings.").

Movants argue that centralization will improve efficiency by eliminating duplicative discovery, avoiding conflicting rules and schedules, and reducing litigation costs.  (ECF No. 1-1 at 9-10.)  Movants' motion offers no support for these conclusions.  As the Panel has indicated, "[t]o the extent that there is factual overlap among the actions, the risk of duplicative discovery and inconsistent pretrial rulings can be minimized through voluntary cooperation and coordination among the parties and the involved courts."  *In re Maybelline New York & L'Oréal Paris Cosmetic Prod. Mktg. & Sales Prac. Litig.*, 949 F. Supp. 2d 1367-68 (J.P.M.L. 2013).  At this stage, there is no basis for Movants' contention that centralization will be more efficient than informal coordination.  Movants therefore fail to carry their burden of establishing that centralization is the ***only appropriate*** path forward.

Furthermore, there is no risk of inconsistent rulings given the permutations of products, defendants and conditions involved in this case.  In addition to being mathematically unlikely any particular ruling by any judge would apply to another case in another court, the individual facts that apply to that plaintiff are not likely to yield the same result.

### 3.    Centralization is Inappropriate Because Plaintiffs' Individual Issues will Require Varied Pleading Challenges, Pretrial Practice and Discovery.

Plaintiffs' varied allegations asserting different claims under different laws will give rise to pleading challenges and other varying pretrial practice that would undermine the efficiency of any centralization.  The Panel has declined centralization where legal issues undermine efficiency.  For example, in *In re Narconon Drug Rehabilitation Marketing, Sales Practices and Products*

*Liability Litigation*, 84 F. Supp. 3d 1367-68 (J.P.M.L. 2015), the Panel held:

> We are not convinced, though, that these common issues are sufficiently complex
> or numerous to warrant the creation of an MDL.  These actions are primarily
> fraud actions and will involve significant case-specific facts, such as the specific
> representations regarding the Narconon Program made to each plaintiff, the
> conditions at the different facilities attended by the plaintiffs at different times,
> and the widely varying injuries allegedly suffered by plaintiffs.  The necessary
> discovery and pretrial practice in each action also will differ from action to action
> due to the different state and federal laws asserted in each action.

The same is true here.  Plaintiffs' complaints are susceptible to jurisdictional challenges, multiple pleading challenges, motions for class certification and varying summary judgment motions.  Certain non-resident Plaintiffs filed in jurisdictions, such as the Northern District of Illinois, where L'Oréal USA has no presence.  These actions will be subject to jurisdictional challenges. *See Bristol-Myers Squibb Co. v. Super. Ct. (Anderson)*, 137 S. Ct. 1773 (2017).  Many Plaintiffs allege fraud and state consumer protection claims that are not pled with specificity. Indeed, most of the complaints fail to even identify the L'Oréal USA products allegedly used. Those complaints will be subject to Rule 9(b) and pleading challenges based on the individual state consumer protection laws alleged.

Plaintiffs alleging class actions will be subject to these pleading challenges, as well as challenges unique to their claims.  For example, these plaintiffs suffered no injury and therefore lack standing.  *See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac. & Liab. Litig.*, 903 F.3d 278, 293 (3d Cir. 2018) (A plaintiff's "wish to be reimbursed for a functional product that she has already consumed without incident does not itself constitute an economic

injury within the meaning of Article III.").  Additionally, the claims are not suitable for class treatment.  *See, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270, 274 (S.D. Ill. 2011) (striking class allegations because "it is evident that individual questions of law and fact predominate, and therefore the case is not manageable as a nationwide or statewide class action").

These wide-ranging jurisdictional, pleading and class certification issues would undermine any efficiency.  Moreover, discovery and pretrial practice will be vastly different in the class context as opposed to the individualized personal injury claims.  Additionally, different experts will be required.  There are no economies of scale to be gained by centralizing the Actions.

### C.       If Created, the MDL Should be Assigned to the Southern District of New York.

In the event the Panel is inclined to grant the motion, the Actions should be transferred to The Honorable Valerie Caproni in the Southern District of New York.  In considering the selection of a transferee court, the Panel considers factors including the location of witnesses and parties; the convenience of the court for the parties and counsel; the experience of the judge; and the agreement of the parties to a particular judge.  *In re Helicopter Crash in Germany on Sept. 16, 1975*, 443 F. Supp. 447, 450 (J.P.M.L. 1978) (transferring litigation to district near defendant's headquarters, where "most of the documents and witnesses concerning the central issues of [] design, manufacture, testing, distribution and sale will be found").  These factors weigh in favor of the Southern District of New York and Judge Caproni.

### 1.       The Southern District of New York is an Appropriate and Convenient Forum.

In selecting a transferee district, the Panel considers the location of witnesses and evidence. *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1364 (2020) (transferring to district where defendant's headquarters were located).  The Panel generally

transfers matters to a district where at least one action is already pending.  *Id.*  The Panel also considers the accessibility of the transferee district.  *In re Vehicle Carrier Servs. Antitrust Litig.*, 978 F. Supp. 2d 1382 (J.P.M.L. 2013) (selecting District of New Jersey for ease of accessibility). A transferee district may also be appropriate if it allows coordination with pending state court actions.  *In re Ford Motor Co. DPS6 PowerShift Transmission Prod. Liab. Litig.*, 289 F. Supp. 3d 1350 (J.P.M.L. 2018).  The Panel also considers the number of multidistrict matters pending in a district and the experience of the judge.  *In re Fresh and Process Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381 (J.P.M.L. 2010) (preference for jurisdiction not overtaxed by MDL matters); *In re Generali COVID-19 Travel Ins. Litig.*, 509 F. Supp. 3d 1365 (J.P.M.L. 2020) (citing experience of transferee judge).

Here, Judge Caproni would be best suited to oversee the Actions if the Panel elects to centralize.  There are 15 multidistrict matters pending in the Southern District of New York.[4] Movants support transfer to the Northern District of Illinois, where there are 14 multidistrict matters pending.[5]  The Southern District of New York has 44 district judges; the Northern District of Illinois has 30.  L'Oréal USA, who is named in nearly all of the Actions, is headquartered in New York and the bulk of the witnesses and documents will be located there.  New York is easily accessible.  New York would also allow coordination with state court proceedings.  L'Oréal USA has already been served with one state court action in New York (*Prudhomme v. L'Oréal USA, Inc.*, Case No. 159714/2022).  Judge Caproni is currently presiding over one of the first-filed Actions, *Terrell v. L'Oréal USA, Inc.*, et al., S.D.N.Y. No. 1:22-cv-09008.  Judge Caproni is

---

[4] *Pending MDLs by District as of Nov. 15, 2022*, U.S. Panel on Multidistrict Litigation (Nov. 15, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_ By_District-November-15-2022.pdf

[5] *Id.*

experienced in handling MDLs and is currently handling one multidistrict matter (*In re London Silver Fixing, Ltd., Antitrust Litig.*, MDL No. 2573).[6]  That MDL involves eight actions.[7]  A second MDL Judge Caproni was handling was recently resolved by the entry of a final judgment (*In re Commodity Exchange, Inc., Gold Futures and Options Trading Litig.*, MDL No. 2548, Judgment Entered Sep. 13, 2022).  Judge Caproni is ideally suited to oversee the Actions if the Panel opts to centralize them.

2.      **If the Panel Elects to Transfer the Actions to the Northern District of Illinois, They Should be Transferred to The Honorable John Tharp, Jr.**

To the extent the Panel elects to centralize and transfer the Actions to the Northern District of Illinois, the matters should be assigned to Hon. John Tharp, Jr.  Judge Tharp is currently presiding over one of the Actions, *Smith v. L'Oréal USA, Inc.*, N.D. Ill. No. 1:22-cv-06047.  Judge Tharp is not currently presiding over any multidistrict matters.[8]  While Judge Tharp does not have significant MDL experience, he is an experienced bench officer well-suited to handle these matters.

Movants propose Hon. Matthew F. Kennelly in the Northern District of Illinois.  Judge Kennelly is already handling two multidistrict matters (*In re Testosterone Replacement Therapy Prod. Liab. Litig.*, MDL No. 2545 (5 actions pending); and *In re Recalled Abbott Infant Formula*

---

[6] *Id.*

[7] *Pending MDLs by Actions Pending as of Nov. 15, 2022*, U.S. Panel on Multidistrict Litigation (Nov. 15, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets _By_Actions_Pending-November-15-2022.pdf

[8] *Pending MDLs by District as of Nov, 15, 2022*, U.S. Panel on Multidistrict Litigation (Nov. 15, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets _By_District-November-15-2022.pdf

*Prod. Liab. Litig.*, MDL No. 3037 (41 actions pending)).[9]  Judge Kennelly's docket would be overtaxed by the addition of another multidistrict matter.

Movants also propose The Honorable Mary M. Rowland.  Judge Rowland took the bench in 2019, and has not yet handled an MDL as a district judge.  (ECF No. 1-1 at 13.)  While Judge Rowland is certainly a well-qualified jurist, she does not have the judicial experience of Judge Tharp, who took the bench in 2012.  If the Court elects to centralize and transfer the Actions to the Northern District of Illinois, they should be assigned to the Honorable John J. Tharp, Jr.

## IV.    CONCLUSION

For the foregoing reasons, L'Oréal USA respectfully requests that the Panel deny the Motion for Transfer.  To the extent the Panel is inclined to transfer the Actions, L'Oréal USA respectfully requests that the Panel transfer them to the Honorable Valerie Caproni in the Southern District of New York.  Alternatively, if the Panel elects to transfer the matters to the Northern District of Illinois, it should assign them to The Honorable John J. Tharp, Jr.

Dated:  December 7, 2022

*/s/  Dennis S. Ellis*
Dennis S. Ellis

ELLIS GEORGE CIPOLLONE O'BRIEN ANNAGUEY LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
dellis@egcfirm.com

Attorneys for Defendants L'Oréal USA, Inc., L'Oréal USA Products, Inc., SoftSheen-Carson LLC and SoftSheen-Carson (W.I.), Inc.

---

[9] *Pending MDLs by Actions Pending as of Nov. 15, 2022*, U.S. Panel on Multidistrict Litigation (Nov. 15, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets _By_Actions_Pending-November-15-2022.pdf